IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Civil Action No. 04-cv-01010-LTB-MJW**

JOHN RAY SWIGER,

Petitioner,

v.

LARRY REID, et al.,

Respondents.

---

**RECOMMENDATION ON APPLICATION FOR A WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. § 2254**

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case is before this court pursuant to a Order of Reference to United States

Magistrate Judge issued by District Judge Phillip S. Figa on June 7, 2004.  (Docket No.

6).  Upon the recent passing of Judge Figa, the case was reassigned to District Judge

Lewis T. Babcock.  (Docket No. 26).

Before the court for a report and recommendation is the pro se incarcerated

petitioner's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254

(Docket No. 2).  The respondents timely filed an Answer (Docket No. 8) and

Supplemental to the Answer (Docket No. 14), which provided a copy of a state court

ruling that had been omitted as an exhibit to the Answer.  Petitioner filed a Traverse.

(Docket No. 11).  Upon order of this court (Docket No. 20), the Clerk of the District

Court of Adams County, Colorado, provided to this court the original written record

(Docket No. 21) of Adams County Case No. 95CR151, <u>People v. John Ray Swiger</u>. The court has very carefully and thoroughly reviewed that record, including transcripts of all proceedings, as well as the petition, the answer, and the traverse, and has considered applicable case law, Federal Rules of Civil Procedure, and statutes. The court now being fully informed makes the following findings, conclusions, and recommendation that the petition be denied and dismissed.

In his petition, the petitioner challenges a judgment of conviction entered in the District Court of Adams County upon a jury verdict finding him guilty of conspiracy to commit first degree murder for which he was sentenced to a term of imprisonment of 48 years. He was acquitted of first degree murder. On October 23, 1997, in an unpublished opinion, the Colorado Court of Appeals (hereinafter "CCA") affirmed the judgment of conviction but vacated the sentence and remanded the case for resentencing, holding that resentencing was required because the trial court had not made adequate findings to support the aggravated sentence. (State Court Records ["SCR"], Vol. 1 at 153-66; Resp. Appx. E.1; <u>People v. Swiger</u>, Colo. App. No. 96CA1644). The Colorado Supreme Court denied certiorari on May 26, 1998, and the mandate was issued on May 28, 1998. (SCR, Vol. 1 at 150-52). On remand, the trial court made additional findings and resentenced the petitioner to 48 years in the custody of the Department of Corrections. (SCR, Vol. 1 at 167). The CCA affirmed the sentence on November 26, 1999 (SCR, Vol. 1 at 177-83; Resp. Appx. M; <u>People v. Swiger</u>, Colo. App. No. 98CA1503), and the Colorado Supreme Court denied certiorari on April 10, 2000. (SCR, Vol. 1 at 175; Resp. Appx. O).

Petitioner filed a motion for post-conviction relief on May 15, 2000, alleging his trial counsel was ineffective. (SCR, Vol. 1 at 184; Resp. Appx. A). A hearing on the motion was held in February 2002. (SCR, Vol. 17 & 18). The court denied the motion on April 12, 2002. (SCR, Vol. 1 at 247-51; Resp. Appx Q). The CCA affirmed the trial court's order on October 23, 2003 (SCR, Vol. 2 at 335-44; Resp. Appx. S), and on April 5, 2004, the Colorado Supreme Court denied certiorari. (SCR, Vol. 2 at 333; Resp. Appx. W).

While the first post-conviction motion was pending, petitioner filed another post-conviction motion to correct his sentence under <u>Apprendi v. New Jersey</u>. (SCR, Vol. (SCR, Vol. 2 at 308). The motion was denied on January 15, 2004, as was petitioner's motion for rehearing on March 1, 2004. (SCR, Vol. 2 at 316-17, 322; Resp. Appx. A & B). Petitioner's appeal was pending at the time the respondents' Answer was filed. Petitioner filed a motion to correct an illegal sentence on May 13, 2004 (SCR, Vol. 2 at 345), which was denied on May 28, 2004 (SCR, Vol. 2 at 359), as was his motion for rehearing on June 30, 2004 (SCR, Vol. 2 at 367).

The Answer Brief in the direct appeal summarized the facts as follows:

> On the night of February 28, 1993, David Seiler, a.k.a. "Grape Ape," was shot and killed moments after he left the apartment of David Paul Stevens, a.k.a. "Crazy Dave."

> In the weeks prior to the murder, Stevens, who was a drug dealer, had been asking around for someone who would kill Seiler. Stevens' initial animosity toward Seiler stemmed from the fact that he suspected Seiler for having stolen a large quantity of drugs from him. In retribution, and in an apparent attempt to confirm his suspicion, Stevens had some associates kidnap Seiler and tried to rough him up . . . . In so doing, they caught the attention of a neighbor, who called the police. Stevens was

arrested and faced kidnapping and assault charges. As a result Stevens'
animosity toward Seiler increased and he wanted Seiler taken care of
before he could testify against him . . . .

Swiger [petitioner], a.k.a. "Dreamer" and "enforcer" for a motorcycle
club, was one of the people Stevens solicited to kill Seiler. Days after the
murder, Swiger, his wife and children, and an adolescent female named
Tina, who was at Seiler's side when he was killed, left Colorado for
Tennessee. When, nearly two years later, Swiger was arrested in
Tennessee on charges there, it came to the attention of the authorities
that Swiger had been bragging about having killed someone in Colorado .
. . .

News of Swiger's boasting eventually led Aurora Detectives
Rodriguez and Petrucelli to interview Swiger in the Sheriff's office in
Carter County Tennessee. During that interview, Swiger admitted that he
had been offered a total of $10,000 to kill Seiler but that he backed out of
the deal. He then admitted that although he did not want to do it, he was
afraid of what would happen to his family if he tried to back out of the deal
so he went ahead with the plan and killed Seiler . . . .

At trial the defense argues that Swiger had confessed to the crime
"to protect someone that he loved, that he still loves" . . . , and that Swiger
was at home, drunk, when Seiler was killed.

The defense suggested that there were several alternate suspects.
Only one of those the defense presented fell into the category of being
someone that the defendant loved: his wife Bonnie Clontz. The defense
evidence showed that Ms. Clontz was out of the house at the time Seiler
was shot and that she was a better marksman than Swiger . . . .

Defense witness Sandra Kay Silver testified that Clontz had
bragged about having killed a man in Colorado . . . . On rebuttal, Ms.
Clontz denied ever saying that . . . .

In response to the prosecution's argument that the validity of Swiger's
confession was underscored by the fact that he knew details only the killer would know,
the defense argued an independent source for that knowledge: if Bonnie had done the
killing she surely would have told Swiger the details . . . .

(Resp. Appx. D at 2-4).

Petitioner raises the following three claims for habeas corpus relief: (1) he is in

custody in violation of the Fifth and Fourteenth Amendments because he was forced to confess to a crime by threats to lock his wife up and put their children in the state's custody and by direct promises to protect his family and to allow a contact visit with his wife; (2) he is in custody in violation of his Sixth Amendment right to effective assistance of trial counsel; and (3) he is in custody in violation of his Sixth Amendment right to effective assistance of post-conviction counsel.

In response, respondents seek the dismissal of the petition and assert the following: (1) plaintiff failed to exhaust and procedurally defaulted claim three; (2) claim one fails because the confession was voluntary, and the CCA's conclusion was neither contrary to nor involved an unreasonable application of U.S. Supreme Court case law; (3) trial counsel's representation was constitutionally effective, and the CCA's conclusion was neither contrary to nor involved an unreasonable application of the U.S. Supreme Court case law; and (4) petitioner has no constitutional right to post-conviction counsel and consequently cannot have a constitutional right to the effective assistance of such counsel.

## Claim Three:  Ineffective Assistance of Post-Conviction Counsel

### Exhaustion and Procedural Default

Respondents correctly assert that petitioner did not exhaust his third claim for habeas relief and that he has also procedurally defaulted that claim.  "Under the doctrine of exhaustion, a state prisoner must generally exhaust available state court remedies before filing a habeas corpus action in federal court. . . .  The exhaustion doctrine requires a state prisoner to 'fairly present[]' his . . . claims to the state courts

before a federal court will examine them." <u>Demarest v. Price</u>, 130 F.3d 922, 932 (10th

Cir. 1997). <u>See</u> <u>Smallwood v. Gibson</u>, 191 F.3d 1257, 1267 (10th Cir. 1999), <u>cert.</u>

<u>denied</u>, 531 U.S. 833 (2000).

The petitioner's Application for a Writ of Habeas Corpus was filed after the

effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

and, therefore, it is governed by the provisions of the AEDPA, regardless of when the

state proceedings occurred. <u>Wallace v. Ward</u>, 191 F.3d 1235, 1240 (10th Cir. 1999),

<u>cert. denied</u>, 530 U.S. 1216 (2000). Section 2254 of Title 28, U.S.C., as amended by

the AEDPA, provides as follows with regard to exhaustion of state court remedies:

. . .

(b)(1) An application for a writ of habeas corpus on behalf of a person in
custody pursuant to the judgment of a State court shall not be granted
unless it appears that –

(A) the applicant has exhausted the remedies available in the
courts of the State; or

(B)(i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to
protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits,
notwithstanding the failure of the applicant to exhaust the remedies available
in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or
be estopped from reliance upon the requirement unless the State, through
counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies
available in the courts of the State, within the meaning of this section, if
he has the right under the law of the State to raise, by any available

procedure, the question presented. . . .

28 U.S.C. § 2254(b), (c).

Generally, when a petitioner fails to exhaust his state court remedies, the federal court should dismiss the petition without prejudice so that those remedies may be pursued. Demarest, 103 F.3d at 939. "However, in considering unexhausted claims, federal courts should consider whether, upon dismissal of the claims, the petitioner would then be able to raise them in the state courts. '[I]f the court to which Petitioner must present his claims in order to meet the exhaustion requirement would now find those claims procedurally barred, there is a procedural default for the purposes of federal habeas review.'" Id. (quoting Dulin v. Cook, 957 F.2d 758, 759 (10th Cir. 1992), which cites Coleman v. Thompson, 501 U.S. 722, 735 (1991)).

Where a petitioner's habeas claim is procedurally defaulted, the federal court may proceed to the merits of the claim only if the petitioner establishes either cause for the default and actual prejudice or a fundamental miscarriage of justice. Klein v. Neal, 45 F.3d 1395, 1400 (10th Cir. 1995). "If cause is established, the petitioner must then show that he suffered actual prejudice as a result of the alleged violation of federal law." Id. The petitioner may also show that he suffered a fundamental miscarriage of justice. To fit within this narrow exception, the petitioner must "supplement[] his constitutional claim with a colorable showing of factual innocence." Id.

In this case, respondents correctly assert that the petitioner did not raise claim three, ineffective assistance of post-conviction counsel, in a procedurally proper manner in the state court. As respondents assert, the CCA disposed of the claim on an

adequate and independent state ground, stating in its ruling on October 23, 2003,

"Defendant next raises three allegations of ineffective assistance of his postconviction

counsel . . . . Because these contentions were not raised in his motion for

postconviction relief, we decline to address them on appeal. . . ." (Resp. Appx. S at 9).

"This court will not perform a habeas review on issues defaulted in state court on

independent and adequate state procedural grounds, unless [petitioner] can

demonstrate 'cause and prejudice or a fundamental miscarriage of justice.'" Dennis v.

Poppel, 222 F.3d 1245, 1250 (10th Cir. 2000) (citations omitted), cert. denied, 534 U.S.

887 (2001). Petitioner here has not shown any cause for failing to raise this claim

properly before the state court or a fundamental miscarriage of justice. Therefore,

habeas review of claim three is barred.

**Review of Claim Precluded**

Even had petitioner raised this claim in a procedurally proper manner before the

state court, 28 U.S.C. § 2254(i) provides that "[t]he ineffectiveness or incompetence of

counsel during Federal or State collateral post-conviction proceedings shall not be a

ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i).

"Because nothing in the U.S. Constitution entitles defendants to post-conviction

assistance of counsel, the failure to provide such assistance (or, more accurately, to

provide *effective* post-conviction assistance) is a matter presenting purely state law.

To the extent that the Petitioner believes he was provided insufficient post-conviction

representation, the Colorado state courts offer him the only remedy." Espinoza v.

Estep, 2007 WL 2746751 (D. Colo. Sept. 19, 2007).

Based on the discussion above, claim three should be denied and dismissed.

**Claims One and Two**

"The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002).  "Under AEDPA, 'federal habeas review of state convictions is limited when the state courts have adjudicated a claim on the merits.'" Parker v. Scott, 394 F.3d 1302, 1308 (10th Cir. 2005).  "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable–a substantially higher threshold." Schiriro v. Landrigan, 127 S.Ct. 1933, 1939 (2007).

More specifically, 28 U.S.C. § 2254 now provides in pertinent part:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(e) (1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(d), (e)(1).  With regard to § 2254(d)(1), the U.S. Supreme Court

has stated that

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses
> have independent meaning. . . .  A federal habeas court may issue the
> writ under the "contrary to" clause if the state court applies a rule
> different from the governing law set forth in our cases, or if it decides a
> case differently than we have done on a set of materially
> indistinguishable facts. . . .  The court may grant relief under the
> "unreasonable application" clause if the state court correctly identifies
> the governing legal principle from our decisions but unreasonably
> applies it to the facts of the particular case. . . .  The focus of the latter
> inquiry is on whether the state court's application of clearly established
> federal law is objectively unreasonable, and we stressed in *Williams* [*v.
> Taylor*, 529 U.S. 362, 409-10 (2000),] that an unreasonable application
> is different from an incorrect one. . . . See also *id.*, at 411 . . . (a federal
> habeas court may not issue a writ under the unreasonable application
> clause "simply because that court concludes in its independent
> judgment that the relevant state-court decision applied clearly
> established federal law erroneously or incorrectly").

Bell v. Cone, 535 U.S. at 694.

"Avoiding these pitfalls does not require citation of [Supreme Court] cases-

indeed, it does not even require awareness of our cases, so long as neither the

reasoning nor the result of the state-court decision contradicts them."  Early v.

Packer, 537 U.S. 3, 8 (2002).  "Furthermore, under § 2254(d)(1), the only 'federal

law' [the court] consider[s] is 'clearly established federal law as determined by

decisions, not dicta, of the Supreme Court.' . . .  Thus, 'an absolute prerequisite for [a

habeas petitioner's] claim is that the asserted constitutional right on which it rests

derive in clear fashion from Supreme Court precedent.'"  Parker v. Scott, 394 F.3d at

1308.  "In sum, [the court] may only grant relief under § 2254(d) if we can say, with

confidence, that the [CCA's] decision unreasonably applied clearly established

Supreme Court law to the facts of this case. If, however, the [CCA's] decision is an

objectively reasonable application of Supreme Court law, then relief 'shall not be

granted,' 28 U.S.C. § 2254(d)(1), even if we would have reached a different result

under our own independent review." Id. at 1309.

With the above standards in mind, this court will review claims one and two of

the petition.

### Claim One: Coerced Confession

Petitioner contends that he

is in custody in violation of his 5th and 14th Amendments when he was
forced to confess to a crime by threat to lock his wife up and put their
children in custody of the state. And direct promise to allow contact visit
with wife.

Supporting facts: Applicants [sic] confession transcript clearly
shows suspected threats. Shows direct promise to protect family and to
allow visit.

1) Incorporated by reference in exhibits, briefs etc. (Direct Appeal)

2) State Courts failed to apply U.S. Supreme Courts [sic] analysis
of People of Colorado v. Rocky Lytle

(Docket No. 2, Petition at 5- 5(b)).

Prior to trial, petitioner, through counsel, moved to suppress statements made by

the petitioner and evidence located as a result of those statements. (SCR, Vol. 1 at

28). A hearing was held on December 15, 1995, and the trial court then made the

following findings with respect to this motion:

The court heard a great deal of testimony this afternoon about the
circumstances under which Mr. Swiger made his statement to Detective
Petrucelli and Detective Rodriguez. The Court has reviewed the motion

to suppress the statements and evidence.

I don't find any support for the allegations in paragraph 4 and 5[1] of that particular motion, at least in the testimony that the Court has heard. And I understand the arguments that Mr. Moya puts forward; however, I believe that in this proceeding against – with Mr. Swiger in the sheriff's office, every effort was made to ensure that Mr. Swiger was not only comfortable, that no threats – and no threats were made that the Court can – is aware of whatsoever. And I don't believe any promises were made.

Answers were given to Mr. Swiger who, apparently, was in a very emotional state at the time, and that's certainly – that's certainly an understandable situation for him to be in. He was looking at a lot of serious charges, and not only from Adams County, but also from Carter County in Tennessee. But I can't find – given the totality of the circumstances there didn't appear to the Court to be any undue lengthy interrogation whose sole purpose was to break down and overcome the will of Mr. Swiger.

Mr. Swiger was not promised anything in the sense, You do this, we'll do that, type of promise. When he expressed concern about his family, he was assured by Detective Petrucelli that his wife and child or children would be protected. He was advised to tell the truth by both Detective Petrucelli and Deputy Chief Potter. I don't believe that's impermissible conduct on their part sufficient to find that his constitutional rights pursuant to Miranda have been violated.

He was given two Miranda warnings. He was advised he could terminate the questioning and ask for an attorney. There's some indication he had an attorney at some point. The Court can't even be clear as to when that was. But the attorney apparently was the sole

---

[1]In paragraph four of the motion, petitioner, through counsel, asserted: "Also present during the custodial interrogation of the Defendant on January 24, 1995 Carter County Sheriff Ken Potter who, unbeknownst to the Aurora detectives before their arrival in Tennessee threatened the Defendant in order to overcome his free will and coerce from him the statement he made to the Aurora detectives." (SCR, Vol. 1 at 28, ¶ 4). In paragraph five of the motion, petitioner asserted through counsel: "Also, unbeknownst to the Aurora detectives, during the Defendant's incarceration in Carter County, Tennessee, Sheriff Carter deprived the Defendant of necessary medication in a further effort to overcome his will and coerce him from the statement that was provided to the Aurora detectives." (SCR, Vol. 1 at 28, ¶ 5).

purpose of contesting the extradition to the State of Colorado or representing him in that extradition proceeding.

The testimony has been that Mr. Swiger refused the services of a lawyer for the preliminary hearing that was taking place on the charges pending against him in the state of Tennessee.

Certainly, I would agree, again, with Mr. Moya, that the police would not have recovered the weapon that they did if it hadn't been for the statements made by Mr. Swiger. And if this Court could find those statements to be induced by promises or intimidation or threats, the Court would have to suppress that evidence. But not being able to find that, the Court is going to deny the motion to suppress statements, including the oral and written statement and the evidence of the .38 caliber weapon.

(SCR, Vol. 6 at 83-86).

The CCA concluded that trial court did not err in admitting petitioner's

confessions and the evidence derived therefrom, finding as follows:

Defendant first contends that the trial court erred in refusing to suppress his confession to the murder, and the evidence derived therefrom, because coercive conduct on behalf of the interviewing officers rendered his statements involuntary. We disagree.

Except under certain circumstances not present here, the prosecution may not use a defendant's involuntary statements at trial. People v. Branch, 805 P.2d 1075 (Colo. 1991). But, a statement will not be deemed involuntary unless there is evidence of coercive government conduct which played a significant role in inducing the statement. Colorado v. Connelly, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); People v. Dracon, 884 P.2d 712 (Colo. 1994). Such conduct includes any sort of threats or violence, any direct or implied promises, and the exertion of any improper influence. Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); People v. Mendoza-Rodriquez, 790 P.2d 810 (Colo. 1990).

When the voluntariness of a defendant's statement is challenged, the court must assess the totality of the circumstances under which the statement was made to determine whether the governmental conduct was coercive and induced the challenged statement. People v. Hutton, 831 P.2d 486 (Colo. 1992).

Here, defendant contends that promises made by the interviewing officers regarding the safety of his family constituted coercive government conduct, thereby rendering is confession involuntary. The record indicates that, at several points during the interview, defendant expressed concern about the safety of his family and was assured by the officers that his wife and his children would be protected. However, when the totality of the circumstances are considered, the record does not indicate that defendant's confession was induced by the officers' assurances.

This is not a case in which promises were made, either expressly or impliedly, in exchange for a full confession. See Arizona v. Fulminante, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); United States v. McCullah, 76 F.3d 1087 (10th Cir. 1996). Indeed, there is no suggestion in the record that the officers' statements regarding protection were either likely or intended to induce the confession. See Jarrell v. Balkcom, 735 F.2d 1242 (11th Cir. 1984); see also People v. McCormick, 881 P.2d 423 (Colo. App. 1994) (promise does not automatically render defendant's statement involuntary merely because it contains mildly coercive elements).

Rather, the question of protection for defendant's family was only discussed upon initiation by defendant. The officers merely responded with attempts to placate him; such conduct did not cause defendant's will to be overborne and his capacity for self-determination to be critically impaired. See Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Therefore, we agree with the trial court that defendant's confession was voluntarily given and, thus, conclude that the trial court did not err in admitting his confessions and the evidence derived therefrom.

(SCR, Vol. 1 at 154-56; Resp. Appx. E.1 at 1-3; People v. Swiger, No. 96CA1644 (Colo. App. Oct. 23, 1997)).

"The Fifth Amendment to the United States Constitution guarantees that no person can be compelled to testify against him or herself in a criminal case. . . .  A confession or admission made during custodial interrogation, but in the absence of legal counsel, can be admitted against a criminal defendant only if the defendant has waived his constitutional rights." Abeyta v. Estep, 2006 WL 1061955, *5 (D. Colo. Apr.

20, 2006) (citing <u>Dickerson v. United States</u>, 530 U.S. 428 (2002); <u>Harris v. New York</u>,

401 U.S. 222, 225 (1971); <u>United States v. Simpson</u>, 7 F.3d 186, 190 (10th Cir. 1993)),

<u>certificate of appealability denied</u>, 198 Fed. Appx. 724 (10th Cir. 2006), <u>cert. denied</u>,

127 S.Ct. 1006 (2007).  "In order to be effective, a waiver must be made 'voluntarily,

knowingly, and intelligently.'"  <u>Smith v. Mullin</u>, 379 F.3d 919, 932 (10th Cir. 2004)

(quoting <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966)).  "The Supreme Court has held

that a court's inquiry into a waiver's validity 'has two distinct dimensions,'" namely:

> First, the relinquishment of the right must have been voluntary in the
> sense that it was the product of a free and deliberate choice rather than
> intimidation, coercion, or deception.  Second, the waiver must have been
> made with a full awareness of both the nature of the right being
> abandoned and the consequences of the decision to abandon it.  Only if
> the totality of the circumstances surrounding the interrogation reveal both
> an uncoerced choice and the requisite level of comprehension may a
> court properly conclude that the *Miranda* rights have been waived.

<u>Id.</u> at 932-33 (quoting <u>Moran v. Burbine</u>, 475 U.S. 412, 421 (1986)).

Upon review of the state court records, including the state court rulings

regarding petitioner's confessions and the petitioner's appellate brief which includes a

transcript of the relevant portions of the petitioner's confession (Resp. Appx. C at 19-

21), this court finds that the state court's decision concerning the confessions is neither

contrary to, nor an unreasonable application of, any decision of the United States

Supreme Court.  Furthermore, no evidentiary hearing is required of this claim.  This

court presumes the trial court's factual findings are correct, and the petitioner has

identified no clear and convincing evidence to rebut them.  This court cannot conclude

that the trial court's factual findings were unreasonable in light of the evidence

presented. As found by the state courts, there was no evidence of coercive government conduct which played a significant role in inducing the petitioner's statements. In addition, there is no indication in the record that the petitioner's confession was induced by the officers' assurances. As found by the state court, there were no promises were made, either expressly or impliedly, in exchange for a full confession. The question of protection of the petitioner's family was discussed only upon initiation by the petitioner, and the detectives merely responded with attempts to placate him. Such response did not cause the petitioner's will to be overborne and his capacity for self-determination to be critically impaired.

Based upon the above findings, habeas relief is not warranted on this claim.

**Claim Two - Ineffective Assistance of Trial Counsel**

In his second claim for habeas relief, petitioner asserts that he is in custody in violation of his Sixth Amendment right to effective assistance of trial counsel "contrary to the United States Supreme Courts [sic] holding in Strickland v. Washington. Due to trial counsels [sic] admittance of errors, ommissions [sic], at pre-trial hearing, at trial, and sentencing. Prejudiced the outcome of Applicants [sic] trial." (Docket No. 2 at 6 - 6(b). More specifically, petitioner alleges the following five errors by his trial counsel: (1) failure to call any witnesses at the suppression hearing, not even petitioner's common law wife or phone records, to prove petitioner's allegations of illegal tactics used to obtain his confession; (2) failure to properly and timely request the affirmative defense of voluntary intoxication, thereby denying petitioner that avenue of defense; (3) failure to object to an erroneous instruction of "intoxication is not a defense" being

read to the jury after their request for a voluntary intoxication instruction was denied;

(4) failure to properly discuss and inform the petitioner of the lesser non-included

offense of accessory after the fact or their decision to not have it amended in; and

(5) failure to object to unproven claims, not facts, that were used to aggravate the

petitioner's sentence to 48 years and failure to object to numerous errors in the pre-

sentence report.

Petitioner raised his ineffective assistance of counsel claim in a post-conviction

motion. Following a hearing on February 15 and 19, 2002 (see SCR, Vol. 17 & 18), the

state district court concluded that "Defendant has not shown under the Strickland and

Davis standard that his counsel's performance was deficient, either at the trial court

level or at the appellate level. Moreover, even if counsel was ineffective, defendant

has not demonstrated prejudice." (SCR, Vol. 1 at 251). In addition, the state district

court made findings concerning each of the specific claims of ineffective assistance

(SCR, Vol. 1 at 247-51). Those findings are set forth below, as are the specific findings

of the CCA (SCR, Vol. 2 at 335; Resp. Appx. S, People v. Swiger, No. 02CA1043 (Colo.

App. Oct. 23, 2003)) as to each claim. The CCA concluded that the lower court did not

err in denying petitioner's post-conviction motion.

"Ineffective assistance claims are reviewed under the framework set forth by the

Court in Strickland v. Washington. To prove ineffective assistance of counsel at . . .

the trial . . . stage, a defendant must show, by a preponderance of the evidence, that

(1) counsel's performance fell below an objective standard of reasonableness, and

(2) prejudice, such that there is a reasonable probability that but for counsel's errors,

the outcome of the trial would have been different." <u>Young v. Sirmons</u>, 486 F.3d 655, 674-75 (10th Cir. 2007) (citing <u>Strickland</u>, 466 U.S. 668, 688 (1984)), <u>petition for cert. filed</u> (Dec. 13, 2007). "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." <u>Strickland</u>, 466 U.S. at 689. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" <u>Id.</u> The court notes in particular that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." <u>Id.</u> at 690-91.

Both the trial court and the CCA utilized the <u>Strickland</u> framework in their analyses. The CCA stated in its decision that

> When a defendant claims to have received ineffective assistance of
> counsel, a court must determine whether counsel's conduct so
> undermined the proper functioning of the adversarial process that the

proceeding cannot be relied upon as having produced a just result. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

> To prevail on such a claim, the defendant must establish that (1) counsel's performance fell below the level of reasonably competent assistance; and (2) that the deficient performance prejudiced the defense, resulting in a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Davis v. People, 871 P.2d 769 (Colo. 1994). . . .

(SCR, Vol. 2 at 337; Resp. Appx. S at 2).

Failure to call witnesses at suppression hearing. The state district court made

the following findings with respect to this claim:

> Defendant testified that his confession to Tennessee law enforcement officials was motivated by his desire to protect his family. He claimed that he made the statements after his common law wife, Bonnie Clontz, told him that law enforcement officials had threatened to charge her with complicity to murder and would take her children. He also indicated that at the time of his confession, he was suffering from a medical condition that prevented him from understanding his rights. He testified that he gave Frank Moya a list of witnesses who would support these claims and that Moya refused to subpoena the witnesses. Defendant, however, acknowledged that one of the individuals he claimed was on the list, Ruth Oldham, would not have supported his claims.

> According to the defendant, Moya apologized for not properly investigating the circumstances around the confession and for not calling witnesses. The defendant also claimed that Moya told him that if he consented to a continuance of his trial, Moya would admit that he was ineffective as defendant's trial counsel. Frank Moya's testimony did not support any of the defendant's claims. Moreover, having had the opportunity to observe his manner and demeanor on the stand, this Court has no difficulty finding and concluding that defendant's allegations are not believable.

> Maria Garcia, the investigator for defense counsel testified that she reviewed all police reports and all discovery in the case and that Moya directed her to interview specific witnesses, with a focus toward developing an alternate suspect defense. She indicated that

approximately twenty witnesses were interviewed prior to trial and that she was asked to interview, prior to the suppression hearing, two individuals from Tennessee, including Ruth Oldham and John Little. She also testified that she interviewed Bonnie Clontz on several occasions.

Defendant did not offer testimony of witnesses he claimed should have been subpoenaed to testify at the suppression hearing. Further, defendant did not call an expert witness to express opinions regarding his claims that counsel's failure to properly investigate and subpoena witnesses.

The evidence did establish that Frank Moya is an experienced criminal defense attorney who had at the time of defendant's trial handled several first degree murder cases as well as numerous other serious felony matters.

Under the totality of the circumstances, defendant has failed to show by a preponderance of the evidence that his trial counsel's representation fell below the level of reasonably competent assistance. Moreover, assuming that he met the first prong of the Strickland standard, defendant was unable to establish how he was prejudiced by the allegedly deficient performance of counsel.

(SCR, Vol. 1 at 248-49).

The CCA subsequently made the following findings and ruling regarding this claim:

Defendant first contends trial counsel failed to investigate and subpoena witnesses for the hearing on the motion to suppress. Specifically, he asserts that his confession was false, was motivated by assurances that his family would be protected from retaliation and prosecution, and was elicited while he was experiencing medical problems. Defendant asserts that he gave his trial attorneys a list of witnesses who would corroborate his claim, but the attorneys failed to contact them. We are not persuaded.

At the postconviction hearing, defendant, his two trial attorneys, an investigator, and a detective present during defendant's confession testified. However, none of these witnesses supported defendant's claim, and defendant did not produce any evidence of the willingness of other witnesses to testify that his confession was coerced or involuntary. Nor did defendant produce any evidence regarding the substance, credibility,

or admissibility of the anticipated testimony of these witnesses.  See People v. Gandiaga, 70 P.3d 523 (Colo. App. 2002) (without the production of witnesses or evidence regarding their proposed testimony, defendant cannot claim prejudice from counsel's failure to interview such witnesses).

To the contrary, the investigator testified that she interviewed approximately twenty witnesses before trial and spoke to law enforcement officials to determine whether defendant's statements were coerced or involuntary, but nothing supported his contention.  Moreover, on cross-examination, when questioned about his failure to procure any corroborating witnesses, defendant said little in response, eventually admitting that one witness on his list had no desire to support his claims.

Hence, the record supports the trial court's finding that, based upon the lack of corroborating witnesses and its observation of defendant's demeanor on the witness stand, defendant failed to demonstrate that counsel's representation was inadequate or that he was prejudiced.

(SCR, Vol. 2 at 338-39; Resp. Appx. S at 3-4).

The state court's findings of fact are presumed to be correct, and the petitioner has failed to rebut them.  Furthermore, this court agrees with the respondents that the CCA's application of Strickland is not unreasonable.  Petitioner has not demonstrated that his counsel's performance at the suppression hearing fell below an objective standard of reasonableness or that he was prejudiced.  As noted by the CCA, none of the witnesses at the post-conviction motion hearing supported petitioner's claim, and petitioner did not produce any evidence of the willingness of other witnesses to testify that his confession was coerced or involuntary.  In sum, this court finds that petitioner's habeas claim on this ground fails because the state court's decision was not contrary to or an unreasonable application of established federal law, nor did it result in a decision based on an unreasonable determination of the facts in light of the evidence presented

in the state court proceeding.

   Failure to make timely notification of defense of voluntary intoxication and failure
to object to erroneous jury instruction.  The state district court made the following

findings and ruling concerning petitioner's allegations concerning his counsel's alleged

failure to give timely notice of intoxication defense, to tender an intoxication instruction,

and to object to the court's instruction concerning intoxication:

>    The trial court refused to accept defense counsel's instruction to
> the jury that intoxication could negate specific intent as to First Degree
> Murder because it concluded that intoxication was an affirmative defense
> and timely notice of intent to assert it as such had not been provided to
> the prosecution.  Instead, the trial court instructed the jury, without
> objection from counsel, that intoxication was not a defense.
>
>    Defendant argues that counsels performance was deficient.
> However, no expert testimony was presented supporting this contention.
> Further, the evidence indicated that the defense strategy was to develop
> and present and alternate suspect defense and thus, intoxication was not
> consistent with that theory.
>
>    Under the totality of the circumstances, defendant has not
> demonstrated that counsel's performance fell below the level of
> reasonably competent representation with respect to issues concerning
> intoxication.  Moreover, even if counsel's representation was deficient,
> defendant has not shown a reasonable probability that but for counsel's
> deficient performance, the result of the trial would have been different.

(SCR, Vol. 1 at 249-50).

   The CCA made the following findings and ruling regarding this claim:

>    Defendant next contends trial counsel failed to give timely notice of
> an intoxication defense, tender an intoxication instruction regarding the
> conspiracy charge, and object to the trial court's instruction concerning
> intoxication.  We disagree.
>
>    At trial, where the focus of the defense was on alternative
> suspects, the court rejected defendant's tendered instruction that

intoxication could negate specific intent because timely notice of that defense was not provided to the prosecution.  Instead, without objection, the court instructed the jury that intoxication was not a defense.

We agree with the postconviction court's conclusion that an intoxication defense was inconsistent with the strategy to present an alternative suspect defense.  See Steward v. People, 179 Colo. 31, 498 P.2d 933 (1972) (defense counsel is in charge of determining what strategy should be used and what evidence should be offered in defending the case).  Moreover, at the postconviction hearing, defendant failed to produce any evidence to support his assertion that trial counsel was deficient with respect to intoxication issues.  No expert testimony was presented regarding the quality of trial counsel's assistance.  See People v. Rodriguez, 914 P.2d 230 (Colo. 1996) (vague or unsupported allegations of counsel's deficient performance are insufficient to warrant relief under Crim. P. 35(c)); People v. Lopez, 12 P.3d 869 (Colo. App. 2000) (same).

In addition, even if we assume counsel's deficiency, because of the inconsistency between intoxication and the alternative suspect defense, defendant has failed to show prejudice.  See People v. Naranjo, 840 P.2d 319 (Colo. 1992).  Accordingly, the trial court properly denied this claim.

(SCR, Vol. 2 at 339-40; Resp. Appx. S at 4-5).

The state court's findings of fact are presumed to be correct, and the petitioner has failed to rebut them.  Furthermore, petitioner has not shown that his counsel's performance fell below an objective standard of reasonableness.  As noted by the state courts, pursuing an intoxication defense would have been inconsistent with the alternate suspect defense presented.  See Jackson v. Shanks, 143 F.3d 1313, 1320 (10th Cir. 1998) ("Trial counsel's decision not to present inconsistent defense theories does not constitute ineffective assistance. . . . [and] [s]imilarly, counsel's failure to seek an intoxication instruction was reasonable, because the instruction would have conflicted with his chosen strategy.").  Furthermore, particularly in view of the

inconsistency of the two defenses, the court agrees with respondents that even had

defense counsel intended to assert an intoxication defense but was untimely, after

considering all the circumstances of the case, counsel's actual representation was

within the wide range of objectively reasonable representation.  See Bullock v. Carver,

297 F.3d 1036 (10th Cir.), cert. denied, 537 U.S. 1093 (2002).  In sum, this court finds

that petitioner's habeas claim on this ground fails because the state court's decision

was not contrary to or an unreasonable application of established federal law, nor did it

result in a decision based on an unreasonable determination of the facts in light of the

evidence presented in the state court proceeding.

     Failure to inform petitioner of offense of accessory after the fact.  The state

district court made the following findings and rulings concerning petitioner's argument

regarding his counsel's failure to submit an instruction on a lesser offense:

> Trial counsel did not request an instruction on a lesser offense of
> Accessory After the Fact and defendant was not consulted concerning
> such an instruction.  Defendant claims that this constitutes ineffective
> assistance of counsel and he was prejudiced because juror affidavits
> indicate that if such an instruction had been given, the defendant would
> have been convicted of the lesser charges.
>
> No evidence was presented supporting defendant's contention.  As
> indicated previously, no expert opinion testimony supports the claim that
> trial counsel's performance was deficient.  Defendant's trial strategy was
> to present an alternate suspect defense.  Moreover, even if counsel's
> performance was deficient, defendant has not made the required showing
> that he was prejudiced.  The juror affidavits, even if admissible, constitute
> pure speculation and conjecture.

(SCR, Vol. 1 at 250).

     The CCA made the following findings and ruling regarding this claim:

Defendant contends trial counsel did not request an instruction on the lesser nonincluded offense of accessory after the fact, nor did counsel consult him regarding such an instruction. Specifically, defendant asserts that he suffered prejudice because two jurors signed affidavits indicating that if such an instruction had been given, defendant would have been convicted only of the lesser charge. We reject this contention.

At the postconviction hearing, one of defendant's trial attorneys testified that after trial, approximately eight jurors approached him and asked whether there was such an offense as being an "accessory." Defendant's investigator then contacted some jurors individually, and two of the jurors signed affidavits. This information led trial counsel to opine that the failure to offer the lesser nonincluded offense was substandard and prejudicial.

However, counsel admitted that his opinion was based on speculation. Likewise, the trial court found that, even if admissible, the affidavits were speculative and conjectural. See Stewart ex rel. Stewart v. Rice, 47 P.3d 316 (Colo. 2002) (CRE 606(b) precludes juror affidavits as a basis for seeking posttrial relief, unless extraneous prejudicial information was improperly brought to a juror's attention or a juror was exposed to an improper outside influence).

The trial court emphasized the lack of expert testimony to support defendant's claim that counsel's performance was deficient. See People v. Rodriguez, supra. Moreover, it found the trial strategy of presenting an alternative suspect defense would be contradicted by the accessory instruction. See Steward v. People, supra.

We agree with the trial court. Even assuming the affidavits were admissible, the insignificance of two doubtful jurors out of a total of twelve would have been inconsequential to an alternative conviction. In fact, if the lesser nonincluded offense instruction had been given, it is possible that defendant would have been convicted of both the conspiracy and accessory crimes. See People v. Broom, 797 P.2d 754 (Colo. App. 1990) (convictions for conspiracy and accessory are not mutually exclusive). Hence, we find no grounds for relief.

(SCR, Vol. 2 at 341-42; Resp. Appx. S at 6-7).

The state court's findings of fact are presumed to be correct, and the petitioner

has failed to rebut them. Furthermore, as noted by the trial court and the CCA, trial

strategy of presenting an alternative suspect defense would be contradicted by the accessory instruction.  In addition, as also noted by the state court, if the lesser non-included offense instruction had been given, it is possible that the petitioner would have been convicted of both the conspiracy and accessory crimes.  Therefore, even if defense counsel did not think to have the lesser non-included offense instruction, and even if the juror affidavits were admissible, after considering all the circumstances of the case, counsel's actual representation was within the wide range of objectively reasonable representation.  See Bullock v. Carver, 297 F.3d 1036 (10th Cir. 2002). "When reviewing an ineffective assistance of counsel claim, [the court] must make every effort 'to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'"  Id. at 1052 (quoting Strickland, 466 U.S. at 689).

In sum, this court finds that petitioner's habeas claim on this ground of ineffective assistance of trial counsel fails because the state court's decision was not contrary to or an unreasonable application of established federal law, nor did it result in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Failure to object at sentencing.  When petitioner was resentenced to 48 years in the Department of Corrections, the trial judge found:

1.    That this was a crime committed under specific extraordinarily aggravating circumstances including:

    1.    This was a killing for hire.

2.      The killing was the result of a conspiracy to prevent a witness from testifying, in another case, against the conspirator.

3.      The victim was a stranger to the defendant.

4.      there was substantial planning regarding all aspects of the killing before it was committed.

5.      The defendant destroyed evidence after the killing by throwing the murder weapon in a creek.

6.      The defendant has a prior felony conviction.

7.      The defendant fled the jurisdiction and hid for two years before being apprehended.

(SCR, Vol. 1 at 167). Here, petitioner claims that his "[t]rial attorneys erred when the failed to object to unproven <u>claims, not facts</u>, that were used to aggravate [sic] [his] sentence to 48 years. As well as numerous errors in presentence report." (Docket No. 2 at 6(b)).

The state district court made the following findings and ruling concerning petitioner's post-conviction claim that his attorney allegedly failed to investigate pre-sentence factors for mitigation and to present effective sentencing argument:

Defendant testified that counsel failed to present evidence at sentencing to establish that he did not flee the state to avoid prosecution but instead went to Tennessee to reclaim property in foreclosure. He also indicated that counsel failed to correct mistakes in the presentence report furnished to the court.

Defendant alleges that counsel's performance was deficient and that he would not have received the lengthy sentence imposed but for counsel's ineffective representation. No credible evidence supports these claims.

As noted previously, defendant presented no expert testimony.

The record indicates that a presentence report was available at the sentencing hearing and that counsel and the defendant reviewed the report. Defendant had not one, but two sentencing hearings and was represented by counsel at both hearings. Defendant has not established that his counsel's performance was deficient. Moreover, given defendant's criminal history and the circumstances of this case, even if counsel was ineffective, defendant has not demonstrated a reasonable probability that but for the deficient performance, the result of the sentencing hearing would have been different.

(SCR, Vol. 1 at 250).

The CCA made the following findings and ruling regarding this claim:

Defendant next contends that counsel failed to investigate and develop mitigating factors at his sentencing. Specifically, defendant asserts that counsel did not correct errors reflected in the presentence report, such as his age at his father's death and reports that he had been charged with forgery and breaking a car window. He also argues that trial counsel failed to present evidence at sentencing to prove that he did not flee the state to avoid prosecution, but instead was forced to leave his home because of foreclosure and that he was still recovering from a broken hand at the time of the offense. Defendant argues he would not have received the lengthy sentence imposed but for ineffective representation. We disagree.

At the postconviction hearing, again noting defendant's failure to present expert testimony, the trial court found no credible evidence to support defendant's arguments. We agree with that determination. Additionally, defendant had two sentencing hearings, including opportunities to review the presentence report with counsel on both occasions, and he made no suggestions.

Moreover, defendant failed to prove how the correction of presentence report errors, or the admission of the additional evidence mentioned above, would have affected his sentence. And in sentencing defendant to the aggravated range, the sentencing court did not rely upon or mention any of these factors. See Ardolino v. People, 69 P.3d 73 (Colo. 2003) (defendant must show that counsel's unprofessional errors were sufficient to undermine confidence in the outcome of the proceeding); Davis v. People, supra (the mere assertion of error is insufficient to meet a defendant's burden of showing that he was prejudiced by counsel's ineffectiveness).

For these reasons, defendant's challenge fails.

(SCR, Vol. 2 at 342-43; Resp. Appx. S at 7-8).

The CCA correctly noted that the trial court did not rely on any of the purported errors in the presentence report to aggravate petitioner's sentence.  Therefore, petitioner could not have been prejudiced by counsel's failure to object to any such inaccuracies.  See Thomas v. United States, 951 F.2d 902, 904 (10th Cir. 1991) (No merit to claim regarding inaccuracies in the PSR because the alleged errors had no impact on the sentence.).  Furthermore, even assuming counsel erred by not providing the court with evidence a foreclosure and a broken hand, as found by the trial court, given the petitioner's criminal history and the circumstances of this case, even if counsel was ineffective, petitioner did not demonstrate a reasonable probability that but for the deficient performance, the result of the sentencing hearing would have been different.  In sum, this court finds that petitioner's habeas claim on this ground fails because the state court's decision was not contrary to or an unreasonable application of established federal law, nor did it result in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Docket No. 2) be **DENIED** and **DISMISSED WITH PREJUDICE**.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file**

written, specific objections to the above recommendation with the District Judge

assigned to the case.  The District Judge need not consider frivolous, conclusive,

or general objections.  A party's failure to file and serve such written, specific

objections waives *de novo* review of the recommendation by the District Judge,

Fed. R. Civ. P. 72(b), <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives

appellate review of both factual and legal questions.  <u>Makin v. Colorado Dep't of

Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411,

Dated: January 29, 2008                    s/ Michael J. Watanabe
        Denver, Colorado                   Michael J. Watanabe
                                           United States Magistrate Judge